Good afternoon, your honors. Charles Swift on behalf of the appellate, Mr. Wadi. If it please this honorable court, I would like to present two areas. First, the instruction or lack of an instruction on law of war defense and what constitutes murder that we preserved and sought from the court. And secondly, the exclusion of Mr. Wadi's son, Amir Wadi, by the judge as an evidentiary ruling. With the court's permission, I'll start with the military instruction. This is a novel issue, your honors, for this court. It has not been raised before. It has been raised in other courts, as set out in the brief. The difference, however, is it's also a novel set of facts. It's novel because of the presence of Turkey in what had been up until that point a civil war. Ordinarily, combatant immunity does not apply in a civil war, perhaps it's special agreement. However, in 2016, Turkey entered into what had been the Syrian civil war hostilely. That is, they were not invited by Syria, and they put military troops in. During the course of the charged conspiracy, the organization to which Mr. Wadi believed, after consulting with Mr. Brody, that they were giving Arhar Al-Sham, which was not a designated terrorist organization, that organization fell under the Syrian National Defense Forces, which were under the control of Turkey, and they were incorporated into the Turkish National Forces for direction and control purpose. That raises, under international law, the idea of combatant immunity. Combatant immunity simply puts that the Turkish forces and those under their control are not liable for murder under international law and U.S. law, because we clearly recognize the Geneva Convention and combatant immunity throughout our history of foreign forces for any of their belligerent acts, so long as they're not war crimes. And so they enjoy general combatant immunity. But what do you do with the evidence that I think may be unrefuted in the record that what was communicated back to the defendant and the other Confederates was that women and children were being killed like dogs? That would be a war crime, Your Honor, but I would say... Exactly, I mean, I guess what I'm getting at is what evidence counters that to create even the slightest entitlement to this instruction? The defense expert testified that generally Ar-Hal Al-Shab complied with the laws of war, and that they, as much as any unit, it was a nasty war, Your Honor, so there's no cutting about it. But generally that they did comply, and in fact, if we look at one of the principal things, the Battle of Cappadnabudo, which was between the Wagner Force, later famous in the Ukraine, and Ar-Hal Al-Shab, and HDS, which also played a significant role, that then was designated, but now is no longer designated, terrorist organization, that battle looks very much like a conventional battle, Your Honors. It's got tanks, it's got two forces with distinction fighting on a battlefield. So there's also evidence in the record that it was a conventional war. And this part, what I'd say to that, also, and the government raises this in part, this is akin to a self-defense instruction. There may be evidence that it is applicable, equally in the record. And reasonable minds could differ, and in fact, the jury certainly could have found they're not entitled to it, based on it. They also, we submit, there was sufficient evidence that they could have found that giving weapons to Ar-Hal Al-Shab in the generic, which is what is on this, is not going to constitute murder and maiming in the process, because they are engaged in regular combatant activities. And for those reasons, we would say that there's sufficient evidence in the record for an instruction, which is the issue before this court, primarily on. The other part in this, the government raised that the judge should have been asked to make individual findings before this. That would have been true, as I recognize, if what we had been doing is asserting a murder charge against any of the actual combatants. Go back to the charge. Just give me a snippet of the context for your requesting the charge and how that emerged below. Special charge conference, you've got exemplars, just give me a snippet. It was a very unusual selection. I've never been part of anything like it, your honors, in cases. The judge did not have a charge conference. I expected one, but he did not. He asked for us to submit things either on record or in emails via his clerk. So we never had a charge conference. We emailed back and forth. There were discussions with the clerk on some of the instructions. Some modifications were made, some were not in this process, but it was an unusual one because there was no, per se, charge conference where we're sitting there on a part. Instead, we submitted the instructions we wanted. Did you get a copy of the charge before? What's that? Did the judge provide a copy of the charge before it was read to the jury? Right before we argued, yes, your honor. We had submitted our counter ones on this process. It was an unusual part and it didn't ask for these things. I believe we had preserved it by putting forth our requested instructions, etc. at that point. It was unusual, but courts have wide latitude. In this context, I felt that we did preserve it. Okay, just pervert me. I don't want to eat away all your time, but context is important. Given what you just said about the emails, etc., and the charge, help me understand precisely what the colloquy, the objection, or whatever it was about this instruction on the record. In other words, was the judge rude orally, or he's at the bench and says, okay, I've got your examples. I'm not giving it here, so just give me a snippet so I can embrace how this is broken. I wasn't ready for the email, so just help me understand before you move the charge forward. To the best of my recollection, your honor, and I will review the record, but to the best of my recollection, we sent in proposed instructions. We were instructed to do that by email as we were coming to the court. Okay, let me ask you more succinctly. Tell me what's the most precise piece when I look at this record to understand exactly what you requested and objected to, and how it is preserved for purposes of disappeal. That's what I want to know. We filed our requested instruction, your honor, on the record on the day of the charges. All right, you filed an instruction, but was there a predicate laid about why this instruction was needed, why it was justified? I think I'm trying to build on what Judge Stewart had just asked you. I mean, where is this in the record that we can see the rationale you put before the district court for the courts rejecting or accepting it? I believe it was in the emails, but I don't know. But if you're trying to drive home to home plate on this issue, I don't understand why you beg about how you put this forward and for us to see it if this is what you're trying to hit a home run with. You know, errors in instructions, judges got great discretion. They're not impervious, but when we're talking about deviating from a pattern charge and something offensive, we've got to be able to really see it here. What you put to the judge, how it was rejected, the full context before we're going to say reversible error in a jury trial. I believe it was in the emails. But I mean, if you rest it on your briefs and us to pour through it, fine. But I'm just telling you, for us, we've all been there. This is what we're looking for. You know, did you persist? One thing they said you submitted some. Obviously, the judge didn't give it, but it's quite another to find where you objected to it, what the basis of it, what the judge said about why. Because otherwise, we're in the universe of discretion of the judge, and that's just not going to be reversible error. I believe we made an oral part that we requested the instructions we'd submitted, but I don't believe we went with that. Were you trial counsel? I was. Okay. I was, along with the public defender on this case. We did it together. All right. Not trying to detract you. If necessary, I'll give you some time at the end. But when you raise a major league issue like this, you know, it's not enough to say the judge erred. You know, it's got to be more than that. We're all thrilled. We don't look to see it. We don't find that this was amply preserved, or the judge clearly knew the basis upon which it did. We're going to be hard-pressed to say, even though you say it's a no-brainer, we're going to be hard-pressed to say that's reversible error. I understand, Your Honor. Okay. Press on. You said you made objections orally. Was that on the record? I believe so. Was it during trial? Right before, I believe, when we were coming in to argue. Again, we did not have a charge conference, Your Honor. I know, but you said you did it orally. Was it on the record somewhere? I believe so. I don't want to commit to that. May I brief to the court? Your Honor, if you're the lawyer who tried the case, I just don't understand how you don't know the answer. Been there, done that. I mean, I just don't. It doesn't diminish the argument you're making. That's why I thought you were going to say, no, I wasn't a trial lawyer. I'm the appellate counsel. But if you were on the ground when this happens, and you're here at 115 arguing reversible error on the jury charge, I don't see it. If you don't know, then I don't know how we're supposed to know. But go to your next issue. I'm just telling you. Yes, Your Honor. The other one is the exclusion of Amir Wadi. Amir Wadi was the appellate's son. And Amir Wadi was the fact witness, was listed on the defense fact witness, and he was being called. The larger overall defense was an entrapment defense, because the government had offered up to $9 million for a search for the purchase of a slaughterhouse that the defendant, Mr. Brody, wanted to buy in Columbia, where a portion of that funds, a very small portion, would be used to provide support. And so our principal issue was entrapment. We did get that. Amir Wadi's exclusion, normally it's under discretion. But in this one, it must be balanced against the Sixth Amendment rights to the defendant to call someone on their behalf. Amir Wadi, quite frankly, was a critical witness. And he was a critical witness for this reason. He would have testified about the defenses, about the source of funds, of Mr. Wadi's funds for travel. There was evidence put forth that Mr. Wadi was in significant financial distress. There was also evidence in Mr. Wadi's statements during the course of the charge conspiracy that he'd made many deals, that he had arms contacts, he had all of these things. It was the defense's position that that was perfect in the process, that he was just trying to say anything to get a deal. One of the things that was left out, however, was how is he doing this traveling if he has no money, his cars are being repossessed, and he's broke? And Amir Wadi could have testified to that. In fact, the critical part of this issue comes out when the judge in this case asks, after Mr. Wadi's been convicted on the bond part, how are you doing this travel? I don't understand your finances. Amir Wadi would have been able to say he was doing that in his proffered, that he was doing that with credit cards, and that Amir Wadi was covering the expenses of the household. That's how they were able to do it. Now, that seriously undercuts the idea that Mr. Wadi had made a lot of international deals or things from abroad or had any of those contacts in the past because it shows he has no money. But all those basic facts were already in the facts except how he was traveling, Your Honor. And one of the problems, and that was not in the record, and that's why the judge asked it of Mr. Wadi as soon as he got up. How are you doing all this traveling? How could you do all of this? And, you know, when you have the implication that there is money on the side or hidden money, yeah, they may be doing all that with cash. The jury certainly could infer that from it. Amir went to undercut that. So he, in our view, was relevant, was necessary, and it severely cut into a Sixth Amendment right of the defendant. And under those parts, the abuse of discretion has to be carefully, extraordinarily weighed when it implicates a defense. And here our argument is that Amir Wadi should have been allowed to testify and that in an entrapment case, since it went to it, it's reversible error to all three. Where's your best case to support this? I don't believe I've found a case exactly on this. In part, Your Honor, as cited in our brief, we believe that the right to call, the Supreme Court's holdings on the right to call, that United States v. Scheffner, 5323 U.S. 303, was one of the first cases where it shows when it infringes on the weighty interest of the accused. And we believe here it infringed on the weighty interest because it infringed on his ability to make his defense. It's a complete defense. And an easy way to look at this and think about it is this court routinely looks at the idea that the government is allowed to add additional witnesses to build their case. In this one, this isn't another character witness. This isn't another part on it. It's not cumulative at all to the travel issue. And therefore, the individual has the right to it. What did the judge say why he was denying this one? He found, I believe, that it was cumulative. It could be hearsay, though we would say on the process that Amir Gowadish, he did that. Incidentally, he ruled without hearing a proffer first. The attorney at sidebar, this issue wasn't heard until the middle of the case. And then he heard the proffer afterwards. An unusual course of events in my experience. Normally, if we have something that significant, we do it in limine. If we can't do it in limine, we call a witness in advance of the testimony and make sure that's not what happened. Again, unusual circumstances. Was there a pretrial conference? Yes. And the exclusion of Amir Gowadish, he was a listed witness. The exclusion was not raised at that point. So it was right before the court. The government made that motion after we came into court at the time. Okay. All right. Well, we'll hear from Mr. Bloomberg on those points and then you preserve your right of rebuttal to cover anything and anything that you didn't cover. Thank you. Thank you. Were you trial counsel, Mr. Bloomberg? Yes, sir. Wonderful. We love to have people who are there in the space. Makes the questions a lot easier. Thank you, sir. May I please court Mark Bloomberg for the United States? If it's okay with the court, I'll take it backwards from the issues. In regard to Amir Gowadish's testimony, we agree that the Sixth Amendment right is critical. However, the Sixth Amendment does not give the defendant right to bring in evidence that's incompetent or otherwise admissible. The defendant failed to show that the district court committed or abused its discretion by not allowing Amir Gowadish's testimony based on, and Judge Klemenger's based on the judge finding that the proper first from defense counsel as to exactly what Mr. Gowadish was going to testify to, Amir Gowadish, was both irrelevant and more prejudicial than probative. At another point in it, the judge also pointed out that it was just against sympathy. And the financial information regarding the defendant's financial situation was already entered into the record through both the source, Mr. Bakker, it's written Baker, but pronounced Bakker, and through Special Agent Martinez, who also gave testimony on cross-examination regarding the defendant's financial situation. What about the travel? I'm sorry, sir? What about the travel? Counsel officers said that the younger Wadi's testimony would have been the only way to connect how the elder Wadi was paying for travel. Your Honor, the government did not, while the evidence came out based on the recordings of the defendant and talking about all his different travel, that wasn't something that the government emphasized. What the government, what was pointed out and what the court focused on was that the defendant's financial situation, including that he lost his business prior to the conspiracy, his financial troubles, borrowed money from his kids and from the source, Bakker, that he did handyman jobs, that his car was repossessed, that he had credit card debt, and he had bad credit. This was all covered in testimony already. Well, right, but with regard to the travel, you said the government didn't emphasize it. Well, clearly it was a question because the district court raised it. Yes, sir. And asked about it. I mean, doesn't that suggest that Mr. Wadi should have been allowed to present evidence to explain that question? Your Honor, the district court, we would argue, didn't commit error in not allowing that in. I know your argument, I guess I'm just trying to understand how you counter the defendant's argument that this was error because if it was material for the district court to bring it up, I'm going to use that word material, but I mean stipulate that I'm not talking legally, would it also not be important for the jury? Would it not be a question in the jury's mind? It could be, Your Honor. Well, doesn't that suggest that he should have been able to present a full defense? Your Honor, we believe that he was allowed to present his full defense. I know that's what you believe. Sorry, sir. But I'm grappling with this representation from counsel opposite that the travel explanation, how did he travel without any money, well, he must have been lying about all that. That's clearly the implication. They should have been able to refute it. Well, on closing argument, the defendant did do a vigorous entrapment defense, including talking about both things that were in the record and other items that were not in the record. I don't have the record on appeal site. But defense counsel did go into these matters about the defendant's financial situation, both items in and out of the record on his closing argument. So these items were before the jury. The jury heard? Justice, the jury heard. But you know that the argument isn't evidence. So what if he argued it? The judge tells the jury what the lawyers say is not evidence. So his point is he was entitled to the evidence. And that goes to Judge Wilson's question, are you saying? Reprise what you're basically saying, that it was cumulative. Are you saying it's cumulative? Are you saying it's relevant? What are you saying? Your Honor, we're arguing it was cumulative. And if it was, it was harmless or given the overwhelming evidence of the defendant's culpability in this crime, that he was predisposed to commit the crime and that he was not induced by the government to commit the crime. That's true. But everybody's entitled to the defense. And he's saying it goes to the heart of his Sixth Amendment right. You just can't come in and say I'm the government and you're guilty. Therefore, you don't get to put it in. So we're just trying to understand what the evidentiary basis for leaving it out. The more specific point, some of it I hear you saying was cumulative. Counsel opposite says there's a portion of it about the travel that was not cumulative. And he's saying the son was the only one who could have induced that. So our question to you, Judge Wilson, is what do you say about his argument that if three-quarters of it was cumulative, but there's one quarter that's not, and that goes to the heart of his defense, he's saying you don't get to say we got all this other evidence. You've got to say why the judge didn't converge me here. Your Honor, I would argue that under the abuse of discretion standard, the court made the ruling that the evidence that was proposed, both with the attorney's proffer as well as after the oral proffer, Mr. Waddy, that it was more prejudicial than probative. And that's the court's. Well, saying it doesn't make it something. So what does that mean, more prejudicial? We know that's lawyer words, right? Sir. Okay. So what is the operational definition of more prejudicial from you, the person who tried the case? What was the judge talking about? Your Honor, I believe what the judge is talking about is that all of this, all of the financial difficulties of the defendant came in, and that the whole purpose of this was to show that somehow the government entrapped him because he was in a precarious financial situation. And in this case, all of that evidence, admittedly other than this one fact, was that all of this came through, and it still didn't change the fact in the jury's mind that the overwhelming evidence beyond a reasonable doubt was that he was not induced, that he was predisposed to commit this crime. Not because of his financial situation. Defense made that argument, and the jury rejected it because they found that he was predisposed, that he was not induced, that he was entitled, or he was given three opportunities to withdraw. And he kept pushing forward. Well, that sounds like to the extent the travel evidence, or that the son was giving the father money to travel, to the extent it wasn't cumulative and all that, it's harmless not to have allowed it. Yes, Your Honor, I would agree with that. Because they still made a vigorous entrapment defense, arguing how what a bad financial situation the defendant was in, that he had to borrow money from his children, that came out. That he had to borrow money from Bacher, the source, that he never paid back. That he had to work as a handyman as a second job and fix Bacher's toilet. All of these items came out showing the financial difficulties he was in. And the jury rejected it. Let me ask you, in your experience, have you ever had another case like this where a person's convicted of a conspiracy to kill or maim individuals in a foreign country simply because of agreeing to send money to terrorist organizations? Have you ever had a case like this? I've never heard of such a thing. No, Your Honor. I have heard of other cases, but this is the first one that I've handled. I've handled other material support cases and other terrorism-related cases, but this was the first one that charged conspiracy to murder and maim abroad under 956. In this case, the evidence was overwhelming that the defendant did conspire to provide and attempt to provide material support for money for weapons for a foreign terrorist organization. Conspired with the CIA or Bacher or whatever you say. No, conspired with Mr. Barodi in Colombia. Mr. Bacher was the government source, confidential source. So there was a specific instruction that the defendant could not conspire with Bacher, that it had to be with Mr. Barodi and others that were not government agents. I don't know if the court wants to go to sufficiency or if the court wants to go back to the combatant immunity. Well, it's your argument. You heard what he argued. He's going to come back up on rebuttal, so this is your shot, too. Well, again, with the testimony of the son, after sharing the full testimony of the proffer from the attorney and then hearing it again from the son himself, the court made the ruling that it was irrelevant and more prejudicial than probative. The defendant still gave his entrapment defense and gave a vigorous entrapment defense, going over how Mr. Bacher somehow tricked the defendant into doing this in order to get money from the FBI and that he never was willing to do this. The defendant failed to show the court abuse of discretion, excluding the testimony of Amir Wadi, and if there was err, the err was harmless. In regard to the combatant immunity defense, I'll be very brief on it. The court asked some questions regarding the combatant immunity instruction, and the proposed instruction was put forth by the defendant first in document 125. I don't have the record on the appeals site, but the problem with the instruction, and also to answer the court's other question, the jury charge went back and forth between the attorneys and the clerk, and then there was a jury conference. Defense renewed its objection, and there was some argument on the combatant immunity defense, but the jury charge as a whole was a correct statement of the law, and the district court did not abuse its discretion in refusing this proposed instruction, and that it was both wrong on the law and insufficient evidence to support it. In terms of it being wrong on the law, the defendant did not exclude the time period, even assuming arguendo, the defendant's theory was correct about Turkey being over Arar Al-Sham, and this was the defendant's group. It didn't exclude the time prior to Turkey being in control, when both Arar Al-Sham and what I'll call the Al-Qaeda group, the designated terrorist organization, when they were committing terrorist acts, and not under Turkey's ruling. The instruction did not leave out that the Al-Qaeda group was never under Turkey's alleged control. In regard to the evidence, to jump to the main point, there was not one iota of evidence within the record that Barodi's relatives were ever under Turkish control. There was no evidence that it was an international armed conflict, and as we see from Hamouda Linn, you can have a very tricky situation with, at one point there can be an international armed conflict where the parties are deserving of combatant immunity, and it can change to where it becomes a non-international armed conflict, where the combatants are not entitled. How do we know that? Does there have to be a declaration of war by Turkey against Syria or against something like that, or how do we prove that? I think on that, the court has to look at the facts, and that's one of the factors they would look at. In this case, Turkey did not declare war on Syria, they just moved into the country. And this is the only court to ever handle this issue that I could find, and certainly it's not binding authority on this court or even on the district court, was Eastern District of Missouri, did the Hadza case that was affirmed on other grounds, cited in my brief, and they found the Syrian conflict was a non-international armed conflict. Well, I guess I'm asking, you know, there are countries in the world that are state sponsors of terrorism. Yes, sir. And it doesn't seem to me that we look through those actual terrorist organizations to the state sponsor. I mean, I'm thinking of Iran and Hezbollah and Hamas, and it seems much clearer than in this case, just what you read in the newspaper, that Iran is the official state sponsor of these groups, but I don't know that that provides these groups the Geneva Convention protection, does it? It does not, and that's part of the problem with the instruction. The instruction not only did the defense not ask for a court ruling on this, the instruction that was proposed doesn't give the jury any guidance on how to figure out, is this an international armed conflict or a non-international armed conflict? Of course it was a conflict, but that doesn't mean that they're entitled to combat immunity. In this case, both in the Hamouda case, as well as in the Hadza case, terrorist groups aren't entitled to combat immunity. That's the fourth element, that they have to operate under the laws and convention of war. And the evidence showed, both before and after this time period, when supposedly Ahrar al-Sham was under the control of Turkey, they were still committing terrorist acts. Also, the... Well, you say that, but I mean, the other side says, no, no, they weren't, they were killing enemy combatants, which is allowed. Well, according to the... WhatsApp videos and texts that Barodi is sending back to the undercover, to the source, to Wadi, they're bragging how they're killing Assyrian soldiers like dogs, along with their women and children. That's not following the laws of war. So they're not entitled to it. But also, again, there's no evidence that Barodi and Wadi's people were ever under Turkish control. And even if they were, according to the only testimony about this issue came from the defense expert. And he himself said that Ahrar al-Sham was under the protective umbrella of Turkey, and these are his quotes, but it was still an autonomous group. Turkey was not in control in the sense of directing Ahrar al-Sham, and they still retained some autonomy. Under the third prong of the Hamoudilin test, and for combat immunity, I'm sorry, the second prong, there has to be control by the Geneva Convention party over their subordinates. Here, there was no control over them. They still retained their own autonomy. So again, they're not entitled to combat immunity. Furthermore, there was the only evidence that Ahrar al-Sham ever wore a uniform, which is the third element, came from Dr. Lesh, the government's expert, and he said that he saw pictures that they sometimes wore uniforms, but mostly they didn't. The only direct evidence of this, of whether or not they wore uniforms, was in the video call in November of 2018 when everyone was down in Bogota and talking over video phone to Birodi's relative, who was the leader in the terrorist group, who was wearing civilian clothes. So there's no evidence that they ever met the second element either. And again, the evidence was overwhelming, that Wadi and Birodi knew the Fudges were not following the laws of war. Birodi recorded himself debating with one of his Mujahideen relatives whether or not to send back the heads or the bodies of the captured soldiers after they beheaded him. Birodi sent back another recording saying that they were killing the Syrian soldiers like dogs, along with their women and children. Wadi said, we're not working with terrorism, say freedom fighters. Don't say murder, or we want to kill someone, or terrorism, because the United States government is listening to these key words. Mr. Wadi is recorded saying, manage affairs in secrecy, especially when it comes to terrorism. The proposed instruction that the defendant offered on combating the unity was incorrect both on the law and the facts. There was no abuse by the district court for refusing to give it. The jury instruction as a whole was a correct statement of the law. And it appears my time is done. Thank you. All right. Thank you, sir. Mr. Swift, your vote. I'll try not to use all of my five minutes, because I'm going to stick strictly to rebuttal in this part. First off, I want to correct some things. Arhal al-Sham is not a terrorist organization. It's never been designated a terrorist organization by the United States of nowhere in the record, and both experts agreed on that. Arhal al-Sham, under the record, was who Birodi's relatives were with. So factually on that part. With the requested part, the instructions where this came, the law, the combatant immunity came up was one. We requested it first in instruction 125, filed with the court, document 125, then 177. Counsel did reflect my, refresh my argument. There was a brief one, and we again asked for it. I cannot remember what we said, Your Honor. I'm going to borrow it to the record on that. But it's 175 in the full instruction. By the way, the full instruction absolutely hit out and hit that war crimes, killing of prisoners or anything that, if the jury found that it was for those things, they should not apply combatant immunities. The law was correct on it. We didn't try and say, oh, anything goes, because it doesn't under the law of the court. Also, there was evidence to the question that Your Honor asked. How do we know? Is there a declaration of war? Since World War II, there really haven't been declarations of war, Your Honor, but there's been lots of international armed conflict. Geneva, which the United States recognizes in the Supreme Court, recognized the Geneva Conventions in Hamdan versus Rumsfeld. Yeah, but there was an authorization to use force. Congress passed what was tantamount to a declaration of war. What do you do about the proxy situation? What's that? What I, as counsel officer, the proxy war situation, where Iran is sponsoring terror all over the world, but they're not a combatant themselves. Yes, in the sense there is that doesn't qualify, and I'll tell you why, Your Honor. If they're sponsoring it, but they have not directly committed belligerent acts in the country, then if we look at the definitions under Geneva, we're not there. That's an awful fine point because the links straight back to Iran are a lot clearer than the links to Turkey here. Let's understand the difference between cause belle, Your Honors. Cause belle is a justification for war. If Iran has done this, we can attack Iran for doing it. That's cause belle. The laws of war, as set out in Geneva, don't care who's at right or who's wrong. They don't care about the moral implications. That's not the idea here. Every nation that's at war thinks they're right. Every nation that isn't, you know, or Geneva wasn't written that way. It's written in the very sense of it says when there is belligerency, occurring hostile military acts in one of the high contracting parties, territory involving another high contracting party, in this case Turkey and Syria, both of which are contracting parties to the Geneva Conventions, the most signed treaty in the world. It has more signatures than anybody else. They're in those territories. Then the Geneva Conventions apply. They set out what constitutes, and that's international conflict. And the idea behind Geneva, Your Honor, was not to set up some sort of idea where we could get in and get out, that we could play on the part. We didn't look at, well, Geneva only applies if there's a declaration of war. No, it's a factual question on it. It would apply in any conflict between us and the Chinese, whether there's a declaration of war or not. If I was a naval officer, if I was a ship, we engage with the Chinese or the Russians or any part of it, that would be covered under the one that covers the sea, the second Geneva Convention. But each one of those covers, and it has the idea of combatant immunity, which the United States has long recognized. Now, it may sound somewhat trite, but us recognizing that is important because it also protects our troops because we sit and claim those protections of the Geneva Conventions for our combatants, for our people. We claim those parts on it. We claim combatant immunity for the belligerent acts that we take. We aren't always perfect. World War doesn't require you to be perfect in this process. So, again, what we had here was an unusual circumstance. It does not apply in a civil war for very obvious parts. No nation was going to arbitrarily give militants in their own nation absent international conflict combatant immunity. Do the Houthis get combatant immunity in Yemen? What's that? Do the Houthis get combatant immunity in Yemen? That's a civil war. Well, actually, no, in the Syrian one, they may not be doing that, in which case they are engaged in breaches of international law and can be held liable for any part that they give. I do not believe the Houthis have taken any Saudis prisoners, so it's pretty hard to say, and I don't know whether the Houthis have taken part. That is another one of those conflicts that starts as a civil war and then you have someone enter a foreign nation state, and at that point, factually, the Houthis are in control of Yemen. So, yes. They're in control of parts of it. I mean, that's the thing. What you're outlining is a complete slippery slope where any time there's a prosecution under these statutes, I imagine what the courts are going to be faced with grappling with it, is it an international conflict, is it the Geneva Convention? I mean, that's clearly beyond the scope of what these statutes are designed to curb. Actually, over the 20 years where we've been in combat on it, this is the only situation that I'm aware of where it would come up. I wouldn't say that at all, Your Honor, because most of the time, let's look at... Well, if we credit it, I doubt it's the only situation that it would come up. We didn't try people for it. For instance, we did not try the Taliban for their combatant activities. We did not try the Iraqi national forces for fighting back. We recognized their combatant immunity. Now, things change once you control the country and it's an occupation. Things change dramatically. In other conflicts, we had been invited in by the government, so that doesn't transform it. This is unique, as I said at the onset. This is a unique legal situation. I don't believe at all you're setting out on a new priority. In fact, you're just recognizing that there are some situations that, as I said, if Turkey had not entered that war, we're not having this conversation. On the points that you've raised, the several, do you want to sort of just close what you're... Do you want to sort of summarize the salient points you absolutely want us to be left with? I want to return then to Wadi's son and his testimony. Provative versus prejudicial, the government doesn't like it. I do not understand the prejudicial at all. We could not articulate a statement as to why this is prejudicial on the stated reason for the judge. And the government, the last part is I would urge your honors to go to Judge Berry's questions of Wadi where he says there's been a lot raised. Exactly, that I argued that this is poofery, but he still had questions about where the money came from. And that's because I couldn't make a complete argument. I'm good enough to make a circumstantial argument that all this travel money, but I didn't have his testimony. So my argument, however, says he made it, was restricted. And restricting my argument requires reversal in this case. Thank you. All right, thanks for your argument. We'll examine the record extremely carefully in light of the arguments made and the points made. Thank you. Wadi is a fully tried case. We don't know what the standards of review are, but nonetheless, the judge has tried right, but not entitled to a perfect trial. But we'll look it up. Exclusion of evidence, 60 amendment rights, those are pressure points. So we'll look at it. Thanks for your group, and we'll get it decided as soon as we can. Thank you, your honors. All right, thank you. It's a pleasure. Thank you very much.